IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN JAMES HOOPER,
    Plaintiff,

v.                                         CASE NO.: 3:10cv539/MCR/CJK

ROBERT A. BEARGIE, et al.,
    Defendants.

---

## REPORT AND RECOMMENDATION

    This matter is before the Magistrate Judge for a Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law.  (Doc. 6).  Plaintiff, Brian James Hooper, has filed a paper entitled "Amended Complaint." (Doc. 4).  This paper is a 37-page typed document seeking monetary, and perhaps other, relief against defendants Synovus Trust Company, N. A., and Richard Neumann, collectively referred to here as Synovus.  Synovus has moved for dismissal under Rules 8(a)(2) and 12(b)(6), FEDERAL RULES OF CIVIL PROCEDURE.  I have concluded that the amended complaint should be dismissed without prejudice and will recommend the same to the District Judge.[*]

    Before reaching the arguments raised by Synovus, I must characterize the

---

[*] When plaintiff filed his initial complaint (doc. 1), he named Robert A. Beargie and others, including Synovus and Richard Neumann, as defendants.  The Magistrate Judge issued a deficiency order (doc. 3) advising plaintiff that he would be required to file an amended complaint within 28 days.  Plaintiff filed such an amended complaint, that being the document now before the court.  The amended complaint names only Synovus and Neumann as defendants.  Plaintiff has abandoned his claims against the other previously named defendants, and, if this Report and Recommendation is approved, the case should be dismissed in its entirety.  The defects in the amended complaint would be fatal, no matter who the defendants are.

complaint before me. The document runs 37 type-written pages. Following some sort of introduction or definitions section, of some nine-and-a-half pages, the document sets out 13 numbered paragraphs and then a conclusion. Having no way to better capture the flavor of this document than a quote, I set out verbatim paragraph 1 (along with prefatory language):

> STATEMENT OF FACTS: These irrefutable facts are backed with many supportive documents and multiple witness accounts.
>
> 1) On April 20t \ 2007, the Plaintiff filed a Federal Civil Action or "Complaint" and "Second Amended Complaint," (See Doc 37, Fed. Case #007-03JO-CV-W-DW) against both his grandfather as Investment trustee ("Fred M. Dierks') and various Custodial trustees representing the United Missouri Bank ("UMB"), including UMB as Corp. entity custodian, as co-defendants for its (their) multiple counts of Abuse of Discretion, Breach of Trust and Fiduciary Duty, Collusion to Embezzle, Duress, de facto Embezzlement, Intentional Negligence, Attempted Criminally Negligent Homicide, not to mention dozens of counts of Intentional Torts of Criminal Gross Negligence that were initiated and heinously caused upon the Plaintiff by his previous co-defendants. These monstrous "abuses of discretion" and "breaches of trust" committed to neglect both the Plaintiff's right to a reasonable "health, education, maintenance, support and welfare," as the Terms of the Trust expressly stipulate, as well as to neglect their own multiple Fiduciary duties owed to the beneficiaries and the Trust Estate itself, neglecting, violating and completely contradicting the "Terms of the Trust" (as a

manifestation of the Settlors' Intentions) for the Trusts to grow, (Secondary only to the Settlor's Intentions for their beneficiaries' "health, education, maintenance, support and general welfare") and for both pecuniary interests to be provided for the Plaintiff to and for his benefit utilizing Trust income, and where income is not sufficient to meet these conditions, then principal monies be provided as well... "and to pay and deliver the same to or for the benefit of the beneficiaries." This clearly reflected concept of unbiased expert care is also clearly reflected by and parallels also the trustee's fiduciary duty of "Impartiality" pursuant to §736.0803, Fla. Stat. The Plaintiff's previous quasi trustees (UMB and Fred Dierks) whom he was previously suing for similar aforementioned abuses, breaches, torts and crimes also had Violated both the explicit Terms of the Trust in terms of both the Settlors' Intentions and the "ascertainable standard of care" that should have been and was supposed to have been provided -pursuant ALSO to the Internal Revenue Code (1986) [U.S. Treas. Reg. 20.2041 (3)(a)(2)], and incredibly these morally debased tortfeasing recidivists even violated their own unlawfully fabricated and fraudulently imposed guidelines which completely contradicted the Settlors' Intentions, thus denying the Plaintiff any form of higher or continuing education in the form of graduate school and/or computer certification classes which the Plaintiff had reasonably and repeatedly requested attempting to gain his self sufficiency and independence from his white-collar criminal bankers while working full-time for years, fulfilling even the trustees' fictitious

and "illusory guidelines" designed to cause him as much deprivation and indignation as could be imagined over a period of nearly 7 years, all reasonably requested well within the capacity of not only the Terms of the Trust but even within the capacity of his trustees' own guidelines (machinations), first fraudulently fabricated and imposed upon him, then intentionally and without reason reneged upon, thus causing the Plaintiff many "preventable losses of prospective gain and earning capacity," a loss of health, education, maintenance, support, and general welfare - ultimately causing the Plaintiff's loss of independence, self-sufficiency and his civil right to sever his dependency upon his quasi-trustees excuse for a fraction of what he would and could have been earning granted the education which he was denied, to earn his own reasonable income as the computer engineer, professor, and business owner that the Plaintiff would have, and quite easily could of become, but for and ONLY due to his previous quasi-trustees' systemically and systematically disabling him-while simultaneously also being subject to his previous quasi-trustees' fraudulent and unlawfully fabricated guidelines, intentionally imposed upon him to force/subject the Plaintiff to "remedial labor" and various "odd jobs" as the only viable alternative to his aforementioned "requests" for his rights, thus forcing/subjecting him to not only doing remedial day labor under the grueling heat of sweltering sun all day for near min. wage (as the alternative to graduate and/or trade school) causing not only a plethora of unconscionable "work related stressors" to occur, but also causing him to "go into debt,"

thus also maliciously defaming his character causing the Plaintiff to suffer even further horrendous socio-economic losses/damages. These Intentional and "ABUSIVELY" committed Torts and Breaches of Trust, all committed by said previous (quasi) trustees/ co-defendants under the Color of Title and guise of "Discretion," were intentionally committed upon NOT ONLY the Plaintiff (as a qualified beneficiary), but also upon his mother (the Primary Beneficiary) and brother as well, in order so that he (the Plaintiff) and his mother and brother included, would all be cast in a false light -to defame their individual characters, to denounce his mother's and brother's testimonies as well as his own almost incredible, but in reality "quite credible" testimony -all as an attempt to preemptively repudiate any potential testimonies against them (the current and previous defendants) and their intentionally fraudulent and criminally negligent conduct. Furthermore and on real information and belief, the previous trustees' as well as the current trustees' Liability to the Plaintiff, his mother and brother, as well as to the Trust Estate and its proper administration, for which the Plaintiff was/is suing them for nearly $240 million in compensatory, general and punitive damages, only contrasts and is clearly reflective of the trustees' (past and present) guilt regarding their past, present and on-going crimes of moral turpitude including, but not limited to: bank fraud, fraud in the inducement, embezzlement, larceny, insider-trading, double-dealing, self-dealing, layering, laundering, abduction, bribery, coercion, duress, death-threats, torture-threats, undue influence and unjust enrichment/de

> facto taking of vast sums the Plaintiff's supposed inheritance -which he wasn't supposed to have earned (which he did anyway), but was supposed to be given to him (within the discretion of his trustees' fulfillment of the Terms of the Trust -reflective of the "ascertainable standard") for any or no reason at any time and from time to time [See Trust Instruments) pursuant to the Plaintiffs Settlors' Intentions of "wealth" for their beneficiaries, notwithstanding the trustees' "absolute discretion" to commit such heinous torts as well as reckless indifference to the needs and beneficial interests of the Settlors' "intended" beneficiaries.

(Doc. 4, pp. 10-13). The remaining 12 numbered paragraphs are not particularly different in tone and style, although some are shorter.

According to FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2), "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) provides for a motion to dismiss a complaint where, the complaint fails "to state a claim upon which relief may be granted . . . ." As stated recently in this district:

> A motion to dismiss for failure to state a claim necessarily implicates an analysis of the complaint under Federal Rule of Civil Procedure 8(a) to determine whether the complaint's allegations constitute a claim for relief. Fed.R.Civ.P. 8(a). Under 8(a) a pleading need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. The standard is a liberal one with the emphasis

> placed on whether the complaint affords the defendant sufficient notice of what the claim is and its grounds. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (*quoting United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003)). . . . The benchmark is whether the complaint identifies the claims with sufficient clearness to allow a response.

*Pfeil v. Sprint Nextel Corp.*, 504 F. Supp. 2d 1273 (N.D. Fla. 2007).  The controlling law on sufficiency of a claim for relief recognizes, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Helicopter v. Twombly*, 550 U. S. 544, 555 (2007)).

One reading Mr. Hooper's document would certainly conclude that he feels he has been wronged, perhaps because he has not realized his expectation of a stream of income from a trust,  and that someone should pay (the conclusion demands monetary damages or $221,303,088.58, along with any "additur" as this court might require). Nevertheless, the same reader of this document would be strained to determine those facts that make up a cause of action, or even what cause, or causes, of action Mr. Hooper has in mind.   On this topic, and as set out in the Synovus motion:

> 2. The confluence of statements of law, legal conclusions, factual allegations, negative characterizations and inflammatory statements makes it impossible for Defendants to separate and respond to - let alone identify - the factual allegations or claims asserted. For instance, within the text of the pleading, Plaintiff purports to assert the following claims: breach of covenant, breach of "express promise," "abuses of discretion,"

"breaches of trust," unspecified negligence, defamation, "torts," "intentionally fraudulent and criminally negligent conduct," "crimes of moral turpitude, including, but not limited to: bank fraud, fraud in the inducement, embezzlement, larceny, insider trading, double-dealing, self-dealing, layering, laundering, abduction, bribery, coercion, duress, death-threats, torture-threats, undue influence, and unjust enrichment/de-facto taking of vast sums [of] the Plaintiff's supposed inheritance," "numerous intentional torts of gross criminal negligence," "misrepresentation," "abuses of discretion," "intentional mal-investing," "financial malpractice/malfeasance," "attempted reckless indifference homicide," "fraudulent and criminal collusion to defraud," "reprehensible criminal mischief and economic sabotage," "fraudulent investment malfeasance and administrative and fiduciary nonfeseances," "pecuniary pederasty," "intentional criminal misrepresentations of material risks and fiduciary duties," "willful, fraudulent, negligent, criminal, and tortuous [breaches of trust]," and "obstruction of justice." (Doc. 6, pp. 2-3).

The amended complaint here does not reach even the low bar of Rule 8, as explained in *Iqbal* and *Twombly*. A litigant, even one represented by the finest counsel, could not reasonably construe the document so as to allow a responsive pleading. Synovus relies upon a recent Eleventh Circuit decision, *Kermanj v. Goldstein*, 401 F. App'x 458 (11th Cir. 2010). In *Kermanj*, the Eleventh Circuit observed:

Plaintiff's 35–page, single-spaced complaint failed to provide sufficient,

coherent factual allegations to survive a motion to dismiss. Plaintiff failed to divide his complaint into numbered paragraphs with discrete sets of facts and into specific counts, or otherwise delineate clearly the causes of action that he intended to pursue against each defendant. Plaintiff filed his complaint on the basis of diversity jurisdiction for an alleged contract dispute. And some of the claims that Plaintiff attempted to raise—like trespass, fraud, and misrepresentation—were apparent from the face of the complaint. But Plaintiff referenced many legal claims that were unrelated to civil, state actions, including criminal extortion, constitutional violations, and violations of the Geneva Convention. So, it was difficult to determine all of the claims Plaintiff sought to raise against which defendants and which claims were plausible on their face. In addition, interspersed with Plaintiff's fact allegations and legal citations were negative characterizations and inflammatory statements about Defendants. These irrelevant statements made it impossible to separate out the factual allegations supporting his claims and amounted to impermissible "labels and conclusions." *See Iqbal*, 129 S.Ct. at 1949.

401 F. App'x at 460. Accordingly, because the *Kermanj* complaint was "neither short nor plain; and the allegations were not simple, concise, and direct . . . the district court committed no error in dismissing the complaint for failure to comply with Rule 8." *Id.* As apparently did the plaintiff in *Kermanj*, Mr. Hooper not only sets out an indecipherable string of legalisms and hyperbolic exclamation, he also works in hints, if not outright accusations, of matters perhaps not particularly germane to whatever

civil cause of action he has in mind.  These include homicide, criminal gross negligence, crimes of moral turpitude, embezzlement, insider trading, laundering, bribery, intentional mal-investing, blatant obstruction of justice, and more.

Should the amended complaint be dismissed pursuant to this Recommendation and Report, and should Mr. Hooper choose to replead, he must be mindful of the basic rules that govern pleading in the United States District Court.  A party must state its claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b).  These paragraphs must comprise a "short and plain statement of the claim showing that (he) is entitled to relief." FED. R. CIV. P. 8(a)(2)   A complaint must offer more than "labels and conclusions." *Iqbal*, 129 S. Ct. at 1949.  Mr. Hooper must bear in mind that his sense of outrage will not carry the day.  He must, if he is to proceed in this forum, set out concise and logical facts tending to demonstrate a civil wrong for which the law allows a remedy.  He should avoid name-calling, both as to named defendants and non-parties, and instead must rely upon actual facts to frame his claim for relief.  This court would also warn Mr. Hooper, that, despite his status as a layperson operating without a lawyer, he must completely avoid calumny and accusations against counsel for Synovus.  *See, e.g.*, (Doc. 11, pp. 2-3).  Such does not add to the persuasiveness of an argument and has no place in a lawsuit.  Moreover, such actions violate rules of civility well-known to laypersons and lawyers alike.  A civil complaint will not survive if it is merely a string of inflammatory accusations.  If Mr. Hooper can set out reasonable facts–not merely conclusions–to show that he has suffered a wrong for which the law recognizes a remedy, and if such facts are framed in such a manner as to fairly allow the defendants to respond, he will find a forum in this court.  If not, he will eventually

face dismissal with prejudice.

ACCORDINGLY, it is respectfully recommended :

1) That the defendants' motion to dismiss (doc. 6) be GRANTED.

2) That the Amended Complaint (doc. 4) be DISMISSED without prejudice for violation of the pleading requirements of Rule 8, FEDERAL RULES OF CIVIL PROCEDURE, and for failure to state a claim upon which relief may be granted.

3) That the clerk be directed to close the file.

DONE AND ORDERED this 31st day of August, 2011.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).